JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CLAIRE H. WOODS (CA Bar No. 282348)
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
Phone: (202) 305-0402
Email: claire.woods@usdoj.gov

*Attorney for plaintiff United States of America*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| GIBSON WINE CO., | |
| Defendant. | |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency (hereafter "EPA"), files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for penalties against Defendant Gibson Wine Co. ("Defendant") for violations of Section 112(r)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r)(1), Section 103 of the Comprehensive Environmental Response, Compensation and

United States v. Gibson Wine Co.                                                                                                    Complaint - 1 -

1  Liability Act ("CERCLA"), 42 U.S.C. § 9603, and Section 304 of the Emergency Planning and
2  Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004, at Defendant's winemaking
3  facility located in Sanger, California.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and the Defendant, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), and under 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this District under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the Defendant does business in, and these claims arose within, this judicial district.

4. Notice of commencement of this action has been given to the State of California pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## PARTIES

5. Plaintiff is the United States of America, acting at the request of the EPA, an agency of the United States.

6. Defendant is a cooperative association organized under the laws of the State of California, and is doing business in this judicial district. Defendant is an owner and operator of a Facility that handles, stores, and uses anhydrous ammonia.

7. Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e), Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and Section 329(7) of EPCRA, 42 U.S.C. § 11049(7).

## STATUTORY AND REGULATORY FRAMEWORK

*A. Clean Air Act*

8. The purpose of Section 112(r)(1) of the CAA is to provide requirements and standards to prevent and minimize accidental releases of air pollutants: "It shall be the objective of the regulations and programs authorized under this subsection to prevent the accidental release

1  and to minimize the consequences of any such release of any substance listed pursuant to
2  paragraph (3) or any other extremely hazardous substance." 42 U.S.C. § 7412(r)(1).

3      9.    Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), mandates three distinct
4  general duty of care requirements for owners and operators of stationary sources producing,
5  processing, handling, or storing listed hazardous substances. In pertinent part, Section 112(r)(1)
6  of the CAA provides:

> The owners and operators of stationary sources producing, processing, handling
> or storing such substances have a general duty in the same manner and to the
> same extent as Section 654 of Title 29 [29 U.S.C. § 654] to identify hazards
> which may result from such releases using appropriate hazard assessment
> techniques, to design and maintain a safe facility taking such steps as are
> necessary to prevent releases, and to minimize the consequences of accidental
> releases which do occur.

10.    A "regulated substance" includes any substance listed by EPA pursuant to CAA Section 112(r)(3).

11.    Anhydrous ammonia is a "regulated substance" because it is listed under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3) and 40 C.F.R. § 68.130.

12.    A "stationary source" means, in relevant part, "any buildings, structures, equipment, installations or substance emitting stationary activities . . . from which an accidental release may occur." Section 112(r)(2)(C), 42 U.S.C. § 7412(r)(2)(C).

13.    Violations of industry standards, including, but not limited to, the industry standards described below in paragraph 14, and state law, including California's Accidental Release Prevention Program ("CalARP"), Cal. Code Regs. tit. 19, div. 2, ch. 4.5, are considered when identifying violations of the CAA's general duty clause with respect to ammonia refrigeration systems.

14.    In light of the hazards posed by the mishandling of anhydrous ammonia, industry trade associations have issued standards for recognized and generally accepted good engineering practices in the ammonia refrigeration industry. The International Institute of Ammonia Refrigeration ("IIAR") publishes bulletins and guidance documents for ammonia refrigeration systems, including without limitation: the 2005 Ammonia Refrigeration Management Program

("IIAR Ammonia Refrigeration Manual"), intended for systems containing less than 10,000 pounds of ammonia; IIAR Bulletin No. 109, "Guidelines for IIAR Minimum Safety Criteria for a Safe Ammonia Refrigeration System (1997)"; IIAR Bulletin No. 110, "Guidelines for Start-Up, Inspection, and Maintenance of Ammonia Mechanical Refrigerating Systems (rev. 2002)"; and IIAR Bulletin No. 114, "Guidelines for Identification of Ammonia Refrigeration Piping and System Components 1991." IIAR, in collaboration with the American National Standards Institute ("ANSI"), also issues "American National Standards" for ammonia refrigeration systems, including without limitation, "Equipment, Design, and Installation of Closed-Circuit Ammonia Mechanical Refrigerating Systems ("ANSI/IIAR 2-2008") and "IIAR Process Safety Management Guidelines for Ammonia Refrigeration (1998)" ("IIAR PSM Guidelines"). The American Society of Heating, Refrigerating and Air-Conditioning Engineers ("ASHRAE"), in collaboration with ANSI, also issues refrigeration standards, including without limitation the "Safety Standard for Refrigeration Systems" ("ANSI/ASHRAE Standard 15-2013").

B. CERCLA

15. Section 103 of CERCLA requires that any person in charge of a facility "shall, as soon as he has knowledge of any release . . . of a hazardous substance . . . in quantities equal to or greater than those determined pursuant to [section 102 of CERCLA] immediately notify the National Response Center [("NRC")]." 42 U.S.C. § 9603(a).

16. Ammonia is a listed hazardous substance with a reportable quantity of 100 pounds. 40 C.F.R. § 302.4.

C. EPCRA

17. Section 304 of EPCRA requires the owner or operator of a facility where hazardous chemicals are produced, used, or stored to immediately provide the State Emergency Response Commission ("SERC") with notice of releases of CERCLA hazardous substances or extremely hazardous substances in excess of reportable quantities.

18. Ammonia is listed as an extremely hazardous substance under EPCRA with a reportable quantity of 100 pounds. 40 C.F.R. Part 355, Appendices A and B.

**GENERAL ALLEGATIONS**

United States v. Gibson Wine Co.                                                                 Complaint - 4 -

19. At all relevant times, Defendant owned and operated a winemaking facility located at 1720 Academy Avenue, Sanger, California ("the Facility").

20. At all relevant times, the Facility has been a "stationary source" as defined in CAA Section 112(r)(2)(C), 42 U.S.C. § 7412(r)(2)(C).

21. At all relevant times, Defendant maintained refrigeration systems at the Facility and those systems utilized, processed, handled, or stored anhydrous ammonia, a "regulated substance" under CAA Section 112(r)(3), 42 U.S.C. § 7412(r)(3).

22. On September 11, 2012, the Facility experienced a 284-pound release of anhydrous ammonia from its ammonia refrigeration system. The incident occurred when a worker attempted to defrost an ammonia chiller and opened the oil valve instead of the hot gas valve, causing ammonia to release into the environment.

23. As a result of the release, an ammonia cloud formed. The worker was unable to close the valve. That worker called for an evacuation of the building. One contract employee was overcome by the ammonia cloud. The evacuated employees attempted to rescue the contract employee, but could not locate necessary emergency response equipment. The contract employee died from exposure to the ammonia.

24. The release of anhydrous ammonia from the Facility on September 11, 2012 was above the reportable quantity of 100 pounds pursuant to 40 C.F.R. § 302.4. Yet, Defendant failed to notify the NRC for 37 hours. Likewise, Defendant failed to notify the SERC, although the SERC received notification of the release from the NRC 37 hours after the release.

25. In response to the release, EPA conducted an inspection of the Facility on January 8, 2013. During the inspection, the inspection team discovered evidence of a number of violations of the CAA, EPCRA and CERCLA.

### FIRST CLAIM FOR RELIEF: SECTION 112(R)(1) OF THE CAA

*Violation 1- Inadequate Component Labeling*

26. Paragraphs 1-25 are incorporated herein by reference.

27. When EPA inspected the Facility on January 8, 2013, Defendant's equipment was not labeled adequately, contrary to industry standards requiring all ammonia piping to have appropriate markers to indicate the use of the pipe and arrows to indicate the direction of the flow. Industry standards require all piping mains, headers, and branches to be identified as to the physical state of the refrigerant, the relative pressure, and the direction of flow. IIAR Bulletin No. 109, Sec. 4.7.6; ANSI/IIAR 2-2008, Sec. 10.5; IIAR Bulletin No. 114. Additionally, lines, emergency isolation valves, and safety systems must be adequately labeled. IIAR Ammonia Refrigeration Manual, Sec. 4.2.

28. Gibson's failure to adequately label its ammonia refrigeration equipment is a violation of Section 112(r)(1) of the CAA's requirements to (1) identify hazards which may result from such releases using appropriate hazard assessment techniques, (2) design and maintain a safe facility taking such steps as are necessary to prevent releases, and (3) minimize the consequences of accidental releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 2 - Inaccurate Ammonia Inventory*

29. At the time of EPA's January 8, 2013 inspection, Defendant's maximum inventories for its ammonia processes were inaccurate. The ammonia inventory calculation, including all vessels and piping, had not been properly performed to show the amount of ammonia in the systems. CalARP and industry standards require facilities to compile and maintain the maximum intended ammonia inventory in their ammonia refrigeration system. IIAR Ammonia Refrigeration Manual, Sec. 3.3; IIAR Bulletin No. 110, Sec. 4; Cal. Code Regs. tit. 19, § 2755.1.

30. Gibson's failure to maintain accurate ammonia inventories is a violation of Section 112(r)(1) of the CAA's requirements to (1) identify hazards which may result from such releases using appropriate hazard assessment techniques, (2) design and maintain a safe facility taking such steps as are necessary to prevent releases, and (3) minimize the consequences of accidental releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 3 - Inadequate Documentation of Codes and Standards*

31. At the time of EPA's January 8, 2013, inspection, Defendant failed to adequately document the codes and standards used to design, build, and operate its ammonia processes. A document found onsite stated that the ammonia system was designed in accordance with NFPA 58, a Liquefied Petroleum Gas Code, not applicable to ammonia processes. CalARP and industry standards require owners and operators to compile and maintain records and documentation describing the codes and standards used to design, build, and operate its ammonia processes. IIAR Bulletin No. 109; IIAR Bulletin No. 110, Sec. 4; IIAR Ammonia Refrigeration Manual, Sec. 3; Cal. Code Regs. tit. 19, § 2755.1.

32. Defendant's failure to adequately document the codes and standards used to design, build, and operate its ammonia processes is a violation of Section 112(r)(1) of the CAA's requirements to (1) identify hazards which may result from such releases using appropriate hazard assessment techniques, and (2) design and maintain a safe facility taking such steps as are necessary to prevent releases. 42 U.S.C. § 7412(r)(1).

*Violation 4 - Failure to use Acceptable Engineered Systems*

33. Defendant failed either to keep the oil drain line on the ammonia chiller plugged except for when draining oil, or to install a deadman valve on the oil drain line at the time of the release. Industry standards require that, prior to performing an oil drain line procedure, the vessel should be equipped with a self-closing or manual quick-closing emergency stop valve. IIAR 2-2008, sec. 14.2. The ammonia release would not have occurred if Defendant had either kept the oil drain line on the ammonia chiller plugged except for when draining oil, or installed a deadman valve on the ammonia chiller, in compliance with industry standards.

34. Defendant's failure to keep the oil drain line plugged or install a deadman valve is a violation of Section 112(r)(1) of the CAA's requirements to (1) design and maintain a safe facility taking such steps as are necessary to prevent releases, and (2) minimize the consequence of releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 5 - Failure to Prepare and Implement Written Standard Operating Procedures*

35. Defendant failed to prepare and implement written standard operating procedures for thawing and draining oil from the ammonia chillers in place. CalARP requires facility

owners to prepare "written operating procedures that provide clear instructions or steps for safely conducting activities associated with each covered process consistent with safety information for that process." Cal. Code Regs. tit. 19, § 2755.3. Industry standards require clear, written instructions for safely conducting activities associated with each covered process. IIAR Bulletin No. 110, Sec. 5.2.2; IIAR Ammonia Refrigeration Manual, Sec. 4. The September 11 release could have been avoided if the Defendant had maintained written standard operating procedures for thawing or draining oil from the chiller.

36. Defendant's failure to prepare and implement written standard operating procedures is a violation of Section 112(r)(1) of the CAA's requirements to (1) design and maintain a safe facility taking such steps as are necessary to prevent releases, and (2) minimize the consequence of releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 6 - Failure to Train and Evaluate Employees*

37. Defendant failed to adequately train and evaluate employees who operated the ammonia chiller valves and who worked in the vicinity of the ammonia chiller valves. CalARP requires comprehensive training and testing of each employee operating a covered process, including periodic refresher training. Cal. Code Regs. tit. 19, § 2755.4. Industry standards require adequate training and refresher training for all employees involved in process equipment operation, equipment maintenance, and emergency response planning, and for all employees who work in areas where hazardous chemicals are present. IIAR Ammonia Refrigeration Manual, Sec. 9. Training must be documented and the employee's understanding of the training must be verified. IIAR Bulletin No. 110, Sec. 5.2.3. At the time of the September 11, 2012 release, Defendant had no formal training program in place that addressed ammonia and chiller process operations. Defendant's failure to implement a formalized training and evaluation program for employees who operate the chiller valves caused or contributed to the ammonia release.

38. Defendant's failure to adequately train and evaluate its employees is a violation of Section 112(r)(1) of the CAA's requirements to (1) design and maintain a safe facility taking

such steps as are necessary to prevent releases, and (2) minimize the consequence of releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 7 - Failure to Inspect and Maintain Mechanical Integrity of Process Equipment*

39. Defendant failed to inspect and maintain the mechanical integrity of the process equipment. CalARP requires owners and operators to prepare and implement procedures to maintain the mechanical integrity of process equipment, including equipment training, inspections, and testing. Cal. Code Regs. tit. 19, § 2755.5(a)-(d). Industry standards require an annual mechanical integrity inspection and a five-year maintenance audit. IIAR Bulletin No. 109, Sec. 5; IIAR Bulletin No. 110, Sec. 6. Additionally, industry standards require testing, replacement, and inspection of pressure relief valves. IIAR Bulletin 109, Sec. 4.9.7; IIAR Bulletin 110, Sec. 6.5.4; ANSI/IIAR 2-2008, Sec. 12.2. At the time of the September 11, 2012 release, Defendant had not been conducting annual mechanical integrity inspections or five year maintenance audits, compromising the safety and integrity of the Facility. Additionally, during the January 8, 2013 inspection, inspectors identified pressure relief equipment that was overdue for replacement.

40. Defendant's failure to inspect and maintain the mechanical integrity of its equipment is a violation of Section 112(r)(1) of the CAA's requirements to (1) identify hazards which may result from such releases using appropriate hazard assessment techniques, (2) design and maintain a safe facility taking such steps as are necessary to prevent releases, and (3) minimize the consequence of releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 8 - Failure to Conduct a Compliance Audit*

41. Defendant failed to conduct a compliance audit at least every three years. CalARP requires owners and operators to certify that they have evaluated compliance with the provisions of CalARP at least every three years to verify that the procedures and practices developed under CalARP are adequate and are being followed. Cal. Code Regs. tit. 19, § 2755.6. At the time of the September 11, 2012 release, Defendant had not conducted a compliance audit within the past three years.

42. Defendant's failure to conduct a compliance audit is a violation of Section 112(r)(1) of the CAA's requirements to (1) identify hazards which may result from such releases using appropriate hazard assessment techniques, and (2) design and maintain a safe facility taking such steps as are necessary to prevent releases. 42 U.S.C. § 7412(r)(1).

*Violation 9 - Failure to Prepare and Implement an Adequate Emergency Response Plan*

43. Defendant failed to prepare and implement an adequate emergency response plan. Industry standards require up-to-date, facility-specific emergency response plans that accurately describe the facility and the potentially affected population. The emergency response plan must include, among other elements, specific evacuation procedures and routes, procedures for accounting for employees, employee rescue procedures, and reporting requirements, and should provide for emergency response exercises. IIAR Ammonia Refrigeration Manual, Sec. 7.2. Specifically, the plan must identify procedures for responding to an ammonia release, including system shut-down, emergency ventilation, and coordination with emergency responders. IIAR Ammonia Refrigeration Manual, Sec. 7.3. Defendant failed to develop and maintain an emergency response plan that adequately identified escape routes.

44. Defendant's failure to prepare and implement an adequate emergency response plan and associated training is a violation of Section 112(r)(1) of the CAA's requirement to minimize the consequence of releases which do occur. 42 U.S.C. § 7412(r)(1).

*Violation 10 - Failure to Provide Adequate Emergency Response Training and Equipment*

45. Defendant failed to provide adequate emergency response equipment and training. Industry standards require owners and operators to provide initial and refresher training, and exercises, regarding the hazards associated with ammonia, safe work practices, and the emergency response plan. IIAR Ammonia Refrigeration Manual, Sec. 9.3. Additionally, industry standards require owners and operators to provide employees with suitable emergency response equipment, including respiratory protection. ANSI/ASHRAE Standard 15-2013, 28-29. The consequences of the ammonia release could have been minimized if Defendant had provided adequate emergency response equipment and training.

46. Defendant's failure to provide adequate emergency response training and equipment is a violation of Section 112(r)(1) of the CAA's requirement to minimize the consequence of releases which do occur. 42 U.S.C. § 7412(r)(1).

47. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by 28 U.S.C. § 2461 and 31 U.S.C. § 3701, provides that the Administrator of EPA shall, in the case of a person who is the owner or operator of a major stationary source, and may, in the case of any other person, whenever such person violates any requirement or prohibition of Subchapter I of the Act (42 U.S.C. §§ 7401-7515), commence a civil action for injunctive relief and to assess and recover a civil penalty of up to $27,500 per day for each such violation.

48. Under the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvements Act of 1996 ("DCIA"), 31 U.S.C. § 3701, and pursuant to EPA's Civil Monetary Penalty Inflation Adjustment Rule ("Inflation Adjustment Rule"), 69 Fed. Reg. 7,121 (Feb. 13, 2004) and 40 C.F.R. Part 19, 73 Fed. Reg. 75,340 (Dec. 11, 2008), promulgated pursuant the DCIA, Defendant is liable for assessment of a civil penalty of up to $27,500 per day for each violation that occurred after January 30, 1997 through March 15, 2004, up to $32,500 per day for each violation that occurred after March 15, 2004 through January 12, 2009, and up to $37,500 per day for each violation that occurred after January 12, 2009.

### SECOND CLAIM FOR RELIEF: SECTION 103 OF CERCLA
*Violation 1 - Failure to Notify the National Response Center*

49. Paragraphs 1-48 are incorporated herein by reference.

50. Section 103 of CERCLA requires that any person in charge of a facility "shall, as soon as he has knowledge of any release . . . of a hazardous substance . . . in quantities equal to or greater than those determined pursuant to [section 102 of CERCLA] immediately notify the National Response Center." 42 U.S.C. § 9603(a).

51. Ammonia is a listed hazardous substance with a reportable quantity of 100 pounds. 40 C.F.R. § 302.4.

52. The September 11, 2012 release of 284 pounds of anhydrous ammonia was a reportable release under Section 103 of CERCLA. However, the NRC was not notified of the release until 37 hours after the incident.

53. Section 109(c) of CERCLA provides as follows:
> The President may bring an action in the United States district court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation (or failure or refusal) continues in the case of . . . (1) A violation of the notice requirements of section 9603(a) or (b) of this title . . . . In the case of a second or subsequent violation (or failure or refusal), the amount of such penalty may be not more than $75,000 for each day during which the violation (or failure or refusal) continues. 42 U.S.C. § 9609(c).

54. Under the DCIA and the Inflation Adjustment Rule, the $25,000 per day penalty has been increased to $37,500 per day, and the $75,000 per day penalty for subsequent violations has been increased to $107,500 per day under Section 109(c) of CERCLA for violations occurring after January 12, 2009. 73 Fed. Reg. 75,340 (Dec. 11, 2008).

### THIRD CLAIM FOR RELIEF: SECTION 304 OF EPCRA

*Violation 1 - Failure to Notify the State Emergency Response Commission*

55. Paragraphs 1-54 are incorporated herein by reference.

56. Section 304 of EPCRA requires the owner or operator of a facility where hazardous chemicals are produced, used, or stored to immediately provide the SERC with notice of releases of CERCLA hazardous substances or extremely hazardous substances in excess of reportable quantities.

57. Ammonia is listed as an extremely hazardous substance under EPCRA with a reportable quantity of 100 pounds. 40 C.F.R. Part 355, Appendices A and B.

58. The September 11, 2012 release of 284 pounds of anhydrous ammonia was a reportable release under Section 304 of EPCRA. However, Defendant never notified the California Emergency Management Agency ("CEMA"), now the California Office of Emergency Services, which functions as the SERC in California. CEMA was not notified by the NRC of the release until 37 hours after the incident.

59. Section 325(b)(3) of EPCRA provides as follows:

      The Administrator may bring an action in the United States District court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation continues in the case of a violation of the requirements of section 11004 of this title. In the case of a second or subsequent violation, the amount of such penalty may be not more than $75,000 for each day during which the violation continues. 42 U.S.C §11045(b)(3)

60. Under the DCIA and the Inflation Adjustment Rule the $25,000 per day penalty has been increased to $37,500 per day, and the $75,000 per day penalty for subsequent violations has been increased to $107,500 per day under Section 325(b)(3) of EPCRA for violations occurring after January 12, 2009. 73 Fed. Reg. 75,340 (Dec. 11, 2008).

## RELIEF SOUGHT

WHEREFORE, Plaintiff, the United States, respectfully prays that this Court provide the following relief:

1. Order Defendant to pay a civil penalty of $37,500 per day for each day of violation of Section 112(r)(1) of the CAA and that occurred after January 12, 2009;

2. Order Defendant to pay a civil penalty of $37,500 per day for each day of violation of CERCLA;

3. Order Defendant to pay a civil penalty of $37,500 per day for each day of violation of EPCRA;

4. Award the United States its costs of this action; and

5. Grant the United States such further relief as this Court may deem just and proper.

Dated: _December 19_, 2015.

FOR THE UNITED STATES:

                                            JOHN C. CRUDEN
                                            Assistant Attorney General
                                            Environment & Natural Resources Division
                                            United States Department of Justice

*Claire H. Woods*
CLAIRE H. WOODS
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
(202) 305-0402 (Woods)

Of Counsel:
RACHEL TENNIS
Office of Regional Counsel, Region IX
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105