1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT FOR THE**

7

**EASTERN DISTRICT OF CALIFORNIA**

8
9
10

11 | **UNITED STATES OF AMERICA,**      Case No. 1:15-cv-1900-AWI-SKO

12          Plaintiff,      **ORDER GRANTING MOTION TO**

13      v.      **STRIKE AFFIRMATIVE DEFENSES**

14 | **GIBSON WINE CO.,**

15          Defendant.      (Doc. 13)

16 _____/

17                    **I. Introduction**

18      The United States of America ("United States" or "Government") has brought the instant

19 environmental protection action against Gibson Wine Company ("Gibson") related to its

20 winemaking activities in Sanger, California. On February 26, 2016, Gibson filed an answer to the

21 Government's complaint which, in addition to addressing each of the Government's causes of

22 action, alleges thirteen affirmative defenses. Doc. 5. The United States now brings a motion,

23 under Federal Rule of Civil Procedure 12(f),[1] to strike four of the affirmative defenses alleged by

24 Gibson. Doc. 13. That motion is now fully briefed. Specifically, United States argues that

25 Gibson's third (statute of limitations), sixth (laches), eleventh (selective enforcement), and

26 thirteenth (general reservation) affirmative defenses should be stricken as insufficient as a matter

27

28
_____

[1] Unless otherwise specified, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

1   of law and as a matter of pleading. Gibson opposes the Government's motion as to all but

2   Gibson's thirteenth affirmative defense, which it concedes should be stricken.

3          For the following reasons, the United States' motions to strike affirmative defenses will

4   be GRANTED. Gibson will be afforded leave to amend its sixth and eleventh defenses.

5                                        **II. Background**

6   Gibson Refrigeration System and Ammonia Release

7          Gibson owns and operates a winemaking facility in Sanger, California. Complaint at

8   ¶ 19. In order to operate that facility, Gibson maintains refrigeration systems. Id. at ¶ 21. Those

9   refrigeration systems require the storage and use of anhydrous ammonia, a "regulated substance"

10  explicitly listed in Section 112(r)(3) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r)(2)(B) &

11  (r)(3)[2] and 40 C.F.R. § 68.130 (designating regulated substances), a "hazardous substance" for

12  purposes of Section 102 of the Comprehensive Environmental Response, Compensation, and

13  Liability Act ("CERCLA"), 42 U.S.C. § 9602 and 40 C.F.R. § 302.4 (designating hazardous

14  substances), and an "extremely hazardous substance"  for purposes of Section 304 of the

15  Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11002 and

16  40 C.F.R. Part 355, Appx. A & B.[3]

17         On September 11, 2012, the winemaking facility "experienced a 284-pound release of

18  anhydrous ammonia from its ammonia refrigeration system." Complaint at ¶ 22; see Answer at ¶

19  22.[4] The Government alleges that the release "occurred when a worker attempted to defrost an

20  ammonia chiller and opened the oil valve instead of the hot gas valve, causing ammonia to

21  release into the environment." Complaint at ¶ 22. A cloud of ammonia formed in the

22  winemaking facility and the facility was evacuated. Complaint at ¶ 23; Answer at ¶ 23. One of

23  Gibson's contract employees was "overcome by the ammonia cloud" and died. Complaint at

24  ¶ 23; see Answer at ¶ 23.

25  _____
26  [2] Section 112(r)(3) of the Clean Air Act required the Administrator of the Environmental Protection Agency to
    promulgate a list of "regulated substances" consisting of "at least 100 substances which pose the greatest risk of
    causing death, injury, or serious adverse effects to human health or the environment from accidental release…." 42
27  U.S.C. §7412(r)(3). The initial list was required to include "anhydrous ammonia." Id.
    [3] Appendices A and B are the same list. The former is organized by name and the latter is organized by Chemical
28  Abstracts Service ("CAS") Number.
    [4] Gibson admits that a release took place but denies that 284-pounds of anhydrous ammonia was released.

1    The United States alleges that the release of ammonia from the winemaking facility

2 exceeded the 100-pound reporting threshold. Complaint at ¶ 24 (citing 40 C.F.R. § 302.4); see 40

3 C.F.R. Part 355, Appx. A & B. The United States further alleges that Gibson did not immediately

4 notify the National Response Center ("NRC") or the State Emergency Response Commission

5 ("SERC").[5] Complaint at ¶ 24. Instead, it waited until 37 hours after the release to report to the

6 NRC. Complaint at ¶ 24; but see Answer at ¶ 24 (generally denying the failure to timely notify

7 the NRC). Gibson never reported the release to the SERC but the SERC learned of the release

8 from the NRC. Complaint at ¶ 24.

9    On January 8, 2013, the Environmental Protection Agency ("EPA") "conducted an

10 investigation of the [winemaking] [f]acility." Complaint at ¶ 25; Answer at ¶ 25. The United

11 States alleges that it discovered the following ten violations of the CAA, one violation of

12 EPCRA, and one violation of CERCLA during the investigation, Complaint at ¶ 25.

13 Alleged CAA Violations

14    The United States alleges that each of the following situations violated Section 112(r)(1)

15 of the CAA, 42 U.S.C. § 7412(r)(1) by failing to (1) identify hazards which may result from

16 chemical releases using appropriate hazard assessment techniques, (2) design and maintain a safe

17 facility taking such steps as are necessary to prevent releases, or  (3) minimize the consequences

18 of accidental releases which do occur. The United States relies on publications from the

19 "International Institute of Ammonia Refrigeration and California's Accidental Release

20 Prevention Program to identify violations of CAA's general duty with respect to ammonia

21 refrigeration systems." Complaint at ¶¶ 13-14.

22    First, the United States alleges and Gibson denies that Gibson's ammonia-carrying

23 refrigeration piping did not contain required markers and labels. Complaint at ¶ 27; Answer at ¶

24 27.

25    Second, the United States alleges that Gibson failed to keep an accurate inventory of the

26 ammonia kept in and for Gibson's refrigeration system. Complaint at ¶ 29; see 19 C.C.R. §

27 2755.1(a)(2). Gibson admits that its maximum inventory estimate was inaccurate. Answer at ¶

28 _____
5

3

1   29. However, Gibson alleges that its inventory estimate over-reported the maximum inventory

2   and was therefore in substantial compliance.

3        Third, the United States alleges that Gibson "failed to adequately document the code and

4   standards used to design, build, and operate its ammonia process." Complaint at ¶ 31; see 19

5   C.C.R. § 2755.1(a)(5). In fact, the United States alleges that the ammonia system was built in

6   compliance with a liquid petroleum standard, not applicable to an ammonia process. Complaint

7   at ¶ 31. Gibson alleges that it relied on "state licensed refrigeration contracts to design, construct,

8   and providing servicing of its refrigeration system." Answer at ¶ 31.

9        Fourth, the United States alleges and Gibson admits that Gibson failed to maintain a plug

10  on oil drain lines when not in use, or install a deadman valve—a fail-safe mechanism that would

11  cease to release gas if the operator released hand pressure on the valve—on the oil drain at the

12  time of release. Complaint at ¶ 33; Answer at ¶ 33. However, Gibson contends that it was not

13  responsible for its failure because it relied on contracts and inspectors that had informed Gibson

14  that its refrigeration system was up to industry standards and in compliance with state

15  regulations. Answer at ¶ 33.

16       Fifth, the United States alleges and Gibson denies that Gibson failed to maintain and

17  "implement written standard operating procedures for thawing and draining oil from the

18  ammonia chillers…."  Complaint at ¶ 35; Answer at ¶ 35; see 19 C.C.R. § 2755.3. The United

19  States alleges that "[t]he September 11, 2012 release could have been avoided if [Gibson] had

20  maintained written standard operating procedures for thawing or draining oil from the chiller.

21  Complaint at ¶ 35. Gibson alleges that "it had in place at the time of the release incident a written

22  Standard Operating Procedure for thawing and draining oil from ammonia chillers. Answer at ¶

23  35.

24       Sixth, the United States alleges and Gibson denies that Gibson "failed to adequately train

25  and evaluate employees who operated the ammonia chiller valves and who worked in the vicinity

26  of the ammonia chiller valves." Complaint at ¶ 37; Answer at ¶ 37; see 19 C.C.R. § 2755.4.

27       Seventh, the United States alleges that Gibson "failed to inspect and maintain the

28  mechanical integrity of the [ammonia] process equipment." Complaint at ¶ 39; see 19 C.C.R. §

1  2755.5(a)-(d). The United States further alleges that, as of September 11, 2012, Gibson had

2  failed to conduct annual mechanical integrity inspections or five year maintenance audits.

3  Complaint at ¶ 39. The United States additionally alleges that, on the date of the inspection,

4  inspectors identified pressure relief equipment that was overdue for replacement. Complaint at ¶

5  39. Gibson denies all of those allegations. Answer at ¶ 39.

6      Eighth, the United States alleges and Gibson denies that "at the time of the September 11,

7  2012 [ammonia] release, [Gibson] had not conducted a compliance audit within the past three

8  years." Complaint at ¶ 41; Answer at ¶ 41; 19 C.C.R. § 2755.6.

9      Ninth, the United States alleges and Gibson denies that Gibson "failed to prepare and

10  implement an adequate emergency response plan." Complaint at ¶ 43; Answer at ¶ 43. The

11  United States described that an adequate plan must include "evacuation procedures and routes,

12  procedures for accounting for employees, employee rescue procedures, and reporting

13  requirements." Complaint at ¶ 43. The United States alleges and Gibson denies that Gibson's

14  plan lacked "adequately identified escape routes." Complaint at ¶ 43; Answer at ¶ 43.

15      Tenth, the United States alleges and Gibson denies that Gibson "failed to prove adequate

16  emergency response equipment and training," including "initial and refresher training, and

17  exercises[] regarding hazards associated with ammonia, safe work practices, and the emergency

18  response plan." Complaint at ¶ 45; Answer at ¶ 45.

19      The United States notes that federal law allows the Administrator of the EPA to

20  commence a civil suit seeking "a civil penalty of up to $27,500 per day for each violation that

21  occurred after January 30, 1997 through March 15, 2004, up to $32,500 per day for each

22  violation that occurred after March 15, 2004 through January 12, 2009, and up to $37,500 per

23  day for each violation that occurred after January 12, 2009." Complaint at ¶¶ 47-48.[6]

24      The United States seeks CAA penalties in the amount of "$37,500 per day for each day

25  of violation … of the CAA that occurred after January 12, 2009." Complaint at p. 13.

26

27  [6] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, the EPA promulgated several rules
amending the dollar amount of penalties that the EPA can seek for violations of law that it is charged with enforcing.

28  E.g. 73 FR 75340-01 (Dec. 11, 2008); 69 FR 7121-01 (Feb. 13, 2004). See 40 C.F.R. § 19.4 (providing an overview
of the amended civil penalties and their effective dates).

1  Alleged CERCLA Violation

2          The United States alleges and Gibson denies that Gibson violated Section 103 of

3  CERCLA when it failed to report the September 11, 2012, release of anhydrous ammonia to the

4  NRC upon learning of the release. Complaint at ¶ 52; see 42 U.S.C. § 9603(a). The United States

5  alleges that the "NRC was not notified of the release until 37 hours after the incident."

6  Complaint at ¶ 52.

7          The United States notes that federal law allows "the President … [to] bring an action" for

8  penalties of "$37,500 per day" for first violations and "$107,500 per day" "for subsequent

9  [CERCLA] violations" occurring after January 12, 2009. Complaint at ¶¶ 53-54.[7]

10          The United States seeks civil penalties in the amount of "$37,500 per day for each day of

11  violation of CERCLA." Complaint at p. 13.

12  Alleged EPCRA Violation

13          The United States alleges and Gibson denies that Gibson violated Section 306 of EPCRA

14  when it failed to notify the California Emergency Management Agency ("CEMA") of the release

15  of anhydrous ammonia. Complaint at ¶ 58; see 42 U.S.C. § 11004.

16          The same civil penalty schedule that applies to CERCLA violations applies to EPCRA

17  violations. See 40 C.F.R. § 19.4. The United States seeks civil penalties in the amount of

18  "$37,500 per day for each day of violation of EPCRA." Complaint at p. 13.

19                                    **III. Legal Standard**

20          Pursuant to Rule 12(f), the court may strike an "insufficient defense." The purpose of

21  Rule 12(f) is to "avoid the expenditure of time and money that … arise[s] from litigating

22  spurious issues by dispensing with those issues prior to trial." Sidney –Vinstein v. A.H.Robins

23  Co., 697 F.2d 880, 885 (9th Cir. 1983). However, because of the limited importance of pleading

24  affirmative defenses in federal practice and because they often needlessly extend litigation, broad

25  motions to strike rarely avoid the expenditure of time and money and are generally disfavored.

26  See Kratz Aerial Ag Service, Inc. v. Slykerman, 2016 WL 1090361, at *2 (E.D. Cal. Mar. 21,

27

28  [7] Effective December 7, 2013, the maximum allowable civil penalty for subsequent violations is $117,500. See 40 C.F.R. § 19.4.

1   2016) (citing Spring v. Fair Isaac Corp., 2015 WL 7188234, at *2 (E.D. Cal. Nov. 16, 2015));

2   Atcherley v. Hanna, 2016 WL 70028, at *1 (E.D. Cal. Jan. 6, 2016) (citation omitted).

3        A defense may be insufficient either as a matter of law or as a matter of pleading. Kaur v.

4   City of Lodi, 2016 WL 627308, at *1 (E.D. Cal. Feb. 17, 2016) (citation omitted). An affirmative

5   defense is legally insufficient if it "lacks merit under any set of facts the defendant might allege."

6   Dodson v. Strategic Restaurants Acquisition Co., 289 F.R.D. 595, 603 (E.D. Cal. 2013) (citation

7   and internal quotation marks omitted).

8        An affirmative defense must give fair notice of the defense pled. Wyshak v. City Nat'l

9   Bank, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam). A split developed in this Circuit after the

10  United States Supreme Court issued Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and

11  Ashcroft v. Iqbal, 556 U.S. 662 (2009), applying a "plausible on its face" standard to allegations

12  of a complaint. Some courts—including this Court—suggested that the plausibility standard

13  applies to affirmative defenses. E.g. Coppola v. Smith, 2015 WL 2127965, at *6 n.4 (E.D. Cal.

14  May 6, 2015) (citing inter alia, Dodson v. Strategic Rests. Acquisition Co. II, LLC, 289 F.R.D.

15  595, 602-03 (E.D. Cal. 2013)). Other courts found that the "fair notice" standard of Wyshak was

16  unaffected by Twombly and Iqbal. See Pacific Dental Services, LLC v. Homeland Ins. Co. of

17  New York, 2013 WL 3776337, at *2 (C.D. Cal. July 17, 2013); Kohler v. Staples the Office

18  Superstore, LLC, 291 F.R.D. 464, 468 (S.D. Cal. 2013).

19       The Ninth Circuit has spoken to the standard by which affirmative defenses must be pled.

20  See Kohler v. Flava Enters., Inc., 779 F.3d 1016, 1019 (9th Cir. 2015). It decided that "the 'fair

21  notice' required by the pleading standards only requires describing [an affirmative] defense in

22  'general terms.' " Kohler, 779 F.3d at 1019 (quoting 5 Charles Alan Wright & Arthur R. Miller,

23  Federal Practice and Procedure, § 1274 (3d ed. 1998)). In this district, courts have recently read

24  Kohler to have resolved the split regarding whether the heightened "plausibility" requirement set

25  out in Twombly and Iqbal modifies the "fair notice" standard traditionally applied to affirmative

26  defenses; they found that it does not. E.g. Staggs v. Doctor's Hospital of Manteca, Inc., 2016 WL

27  880960, at *3 (E.D. Cal. Mar. 8, 2016); Deleon v. Elite Self Storage Management, LLC, 2016

28  WL 881144, at *1-2 (E.D. Cal. Mar. 8, 2016). Courts in the Northern District continue to apply

1   the plausibility standard. <u>Hartford Underwriters Ins. Co. v. Kraus USA, Inc.</u>, ---F.R.D.---, 2016

2   WL 127390, at *1 (N.D. Cal. Jan. 12, 2016) (applying the plausibility standard to affirmative

3   defenses); <u>Martinez v. County of Sonoma</u>, 2016 WL 1275402, at *1 (N.D. Cal. Apr. 1, 2016)

4   (same); <u>Perez v. Wells Fargo & Company</u>, 2015 WL 5567746, at *3 (N.D. Cal. Sept. 21, 2015)

5   (In <u>Kohler</u> "the Ninth Circuit did not specifically hold in that case that the <u>Twombly</u> [and ] <u>Iqbal</u>

6   standard does not apply to the pleading of affirmative defenses."); <u>see also</u> <u>Hernandez v. Dutch</u>

7   <u>Goose, Inc.</u>, 2013 WL 5781476, at *4, n.2 (N.D. Cal. Oct. 25, 2013) ("[E]very judge in th[e]

8   [Northern District] to have taken up the issue has concluded that <u>Iqbal</u> and <u>Twombly</u> apply to the

9   pleading of affirmative defenses.")

10         <u>Kohler</u> was not explicit that <u>Twombly</u> and <u>Iqbal</u> do not apply to determining the

11   sufficiency of affirmative defenses. In fact, <u>Kohler</u> quoted from the 1998 version of a practice

12   guide, the most recent version of which identifies the dispute but does not purport to resolve

13   whether <u>Twombly</u> and <u>Iqbal</u> apply. <u>See</u> <u>Kohler</u>, 779 F.3d at 1019 (quoting 5 Charles Alan

14   Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 1274 (3d ed. 1998)); 5 Charles

15   Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 1274 (3d ed. Apr. 2016)

16   ("[C]ourts are in disagreement as to whether the pleading standard articulated in … <u>Twombly</u>

17   and <u>Iqbal</u> … extends to the pleading of affirmative defenses."). That aside, this Court finds that

18   requiring that an affirmative defense to be described in " 'general terms' does not … invoke"—

19   and in fact appears inconsistent with— "the heightened standard of substantive plausibility

20   identified by <u>Twombly</u> and <u>Iqbal</u>." <u>Aubin Industries, Inc. v. Caster Concepts, Inc.</u>, 2015 WL

21   39140000, at *6 (E.D. Cal. June 25, 2015); <u>see</u> <u>Deleon</u>, 2016 WL 881144 at *2. This Court will

22   not apply <u>Twombly</u> and <u>Iqbal</u> to determining the sufficiency of affirmative defenses.

23         "Fair notice … requires that the defendant state the nature and grounds for the affirmative

24   defense."<u>Varrasso v. Barksdale</u>, 2016 WL 1375594, at *1 (S.D. Cal. Apr. 5, 2016); <u>Leos v.</u>

25   <u>Rasey</u>, 2016 WL 1162658, at *1 (E.D. Cal. Mar. 24, 2016); <u>Uriarte v. Schwarzenegger</u>, 2012

26   WL 1622237, at *3 (S.D. Cal. May 4, 2012). Although "fair notice" is a low bar that does not

27   require great detail, it does require a defendant to provide "some factual basis" for its affirmative

28   defenses. <u>Sherwin-Williams Co. v. Courtesy Oldsmobile-Cadillac, Inc.</u>, 2016 WL 615335, at *2

1  (E.D. Cal. Feb. 16, 2016) (citation omitted); Beco Dairy Automation, Inc. v. Global Tech

2  Systems, Inc., 2015 WL 958012, at *2 (E.D. Cal. Dec. 31, 2015) (citation omitted). Simply

3  referring to a doctrine or statute is insufficient to afford fair notice. Wild v. Benchmark Pest

4  Control, Inc., 2016 WL 1046925, at *4 (E.D. Cal. Mar. 16, 2016); Stevens v. Corelogic, Inc.,

5  2015 WL 7272222, at *4 (S.D. Cal. Nov. 17, 2015); Beco Dairy Automation Inc. v. Global Tech

6  Systems, Inc., 2015 WL 5732595 (E.D. Cal. Sept. 28, 2015); Kohler v. Staples, 291 F.R.D. 464,

7  469 (S.D. Cal. 2013). That said, some courts have held that "[f]or well-established [affirmative]

8  defenses, merely naming them may be sufficient." Springer v. Fair Isaac Corp., 2015 WL

9  7188234, at *4 (E.D. Cal. Nov. 16, 2015) (citing Ganley v. Cnty. of San Mateo, 2007 WL

10  902551, at *2 (N.D. Cal. Mar. 22, 2007)); Devermont v. City of San Diego, 2013 WL 2898342,

11  at *2 (S.D. Cal. June 14, 2012); accord Deleon, 2016 WL 881144 at *2; Sherwin-Williams, 2016

12  WL 615335 at *7 (finding that an affirmative defense alleging that plaintiff's recovery was

13  barred by unclean hands, describing only the elements and no facts in support of that defense,

14  provided fair notice). This Court will not accept fact-barren affirmative defenses or bare

15  references to doctrines or statutes because such pleadings do not afford fair notice of the nature

16  of the defense pleaded. Board of Trustees of IBEW Local Union No. 100 Pension Trust Fund v.

17  Fresno's Best Indus. Elec., Inc., 2014 WL 1245800, at *4 (E.D. Cal. Mar. 24, 2014) ("Simply

18  identifying an affirmative defense by name does not provide fair notice of the nature of the

19  defense or how it applies in this action…."); see Wyshak, 607 F.2d at 827 (holding that fair

20  notice of the nature of the defense requires more than allegation of the doctrine at issue).

21       Even if a motion to strike is granted, leave to amend an affirmative defense to cure a

22  pleading deficiency—or add a new affirmative defense—should be liberally granted in absence

23  of prejudice to the opposing party. Hall v. City of Los Angeles, 697 F.3d 1059, 1073 (9th Cir.

24  2012); Wyshak, 607 F.2d at 827.

25  **IV. Discussion**

26       In answer to the Government's complaint, Gibson has alleged thirteen affirmative

27  defenses, four of which are the subject of the motion before this Court. The Court now addresses

28  the Government's contentions that Gibson's laches, statute of limitations, and selective

1   enforcement affirmative defenses, and Gibson's reservation of future defenses should all be

2   stricken as legally insufficient and insufficient as a matter of pleading.

3   A. Laches

4        Gibson's sixth cause of action reads: "The Complaint and each cause of action is barred,

5   in whole or in part, to the extent the Government is barred by the doctrine of laches from

6   asserting such causes of action." Answer at p. 19.

7        As to the legal sufficiency of Gibson's laches affirmative defense, the Government

8   contends that "latches is not a valid defense to an action brought by the government to enforce a

9   public right or interest." Doc. 13-1 at 3 (citing, inter alia, United States v. Summerlin, 310 U.S.

10  414, 416 (1940); Bresson v. Comm'r of Internal Revenue, 213 F.3d 1173, 1175-76 (9th Cir.

11  2000)); Santiago v. Immigration and Naturalization Services, 526 F.2d 488, 493 n.10 (9th Cir.

12  1975). The law on that issue is not exactly as the government suggests. A defendant might be

13  able to successfully assert laches against the United States in an action to enforce a public right if

14  it showed affirmative misconduct on the part of the United States. Federal Trade Commission v.

15  Directv, Inc., 2015 WL 9268119, at *2 (N.D. Cal. Dec. 21, 2015) (citing United States v. Ruby

16  Co., 588 F.2d  697, 705 n.10 (9th Cir. 1978); see also United States v. Batson, 608 F.3d 630, 633

17  n.3 (9th Cir. 2010) (Although "laches traditionally is not a defense against the United States…

18  that doctrine is not as rigid as it once was….") Accordingly, this Court cannot conclude that

19  Gibson's laches defense lacks merit under any facts that Gibson might allege. It is not legally

20  insufficient.

21       Although facts might be alleged that could state a meritorious defense, Gibson does not

22  allege them. In fact, Gibson alleges no facts in support of its defense. Gibson's pleading is

23  boilerplate. The nature and grounds of the laches defense is not clear here. Gibson's latches

24  defense is insufficiently pled and will be stricken. See Weintraub v. Law Office of Patenaude &

25  Felix, A.P.C., 299 F.R.D. 661, 667 (S.D. Cal. 2014); see also Martinez v. County of Sonoma,

26  2016 WL 1275402, at *3 (N.D. Cal. Apr. 1, 2016) (striking a substantively identical laches

27  defense for failing to meet the plausibility standard). Gibson will be granted leave to amend its

28  affirmative defense to identify how the doctrine of laches would apply in this case. For instance,

1  Gibson should identify the governmental misconduct that might support a laches defense and the

2  prejudice that it has suffered as a result of the delay in filing this action.

3  B. Statute of Limitations

4      Gibson's third affirmative defense alleges: "The Government's claims are barred in

5  whole or in part by the applicable statutes of limitations." Answer at p. 19.

6      The United States moves to strike that affirmative defense, contending that each of the

7  causes of action alleged in the Complaint are governed by a five-year limitations period. Doc.

8  13-1 at 6 (citing 28 U.S.C. § 2462). The United States argues that because it filed its complaint

9  on December 19, 2015, and does not seek damages for any event taking place prior to December

10  19, 2010. Id. at 6-7. Gibson admits that the EPCRA and CERCLA claims are subject to a five-

11  year limitations period. Doc. 16 at 5-6. However, it contends that the CAA claim is subject to the

12  six-month limitations period set out by 29 U.S.C. § 658. Gibson is incorrect.

13      A five-year statute of limitations applies to any action "for the enforcement of any civil

14  fine, penalty, or forfeiture" where a specific limitations period has not been set. 28 U.S.C. §

15  2462. Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), imposes a general duty upon

16  operators of stationary sources that make use of ammonia, "in the same manner and to the same

17  extent as section 654 of Title 29[,] to identify hazards which may result from [its] release[] using

18  appropriate hazard assessment techniques, to design and maintain a safe facility…, and to

19  minimize the consequences of accidental releases." Gibson contends that the express parallel of

20  the duty imposed by section 112(r)(1) of the CAA to the duty imposed by the General Duty

21  Clause of the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 654, suggests that the

22  six-month period for the United States Secretary of Labor or his representative to issue citations

23  for OSHA violations, 29 U.S.C. § 658. Unsurprisingly, Gibson provides no authority for this

24  proposition. The Court's research has yielded no case that has ever applied any limitations period

25  to a CAA penalty action—by the government or otherwise—other than the five-year period set

26  by 28 U.S.C. § 2462. See, e.g., United States v. EME Homer City Generation, L.P., 727 F.3d

27  274, 284, 296 (3rd Cir. 2013); United States v. Campbell Soup Co., 1997 WL 258894, at *1-2

28  (E.D. Cal. 1997). In fact, the Ninth Circuit affirmatively held that an action seeking civil

1 penalties under the CAA is governed by the five-year period set by 28 U.S.C. § 2462. United

2 States v. Walsh, 8 F.3d 659, 662 (9th Cir. 1993).

3        Moreover, even if this Court were not bound by the Ninth Circuit's determination that a

4 five year limitations period applies, the Court is unpersuaded by Gibson's argument. Section

5 112(r)(1) describes the duties of operators of stationary sources that make use of hazardous

6 chemicals as parallel to the duty to comply with occupational safety and health standards; it does

7 not speak to the limits of an enforcement action for violation of that duty; it does not set a

8 limitations period. See 42 U.S.C. § 7412(r)(1).

9        The limitations period for an action seeking penalties under the CAA is five years. The

10 United States does not seek penalties for any period outside of the five-year limitations period.

11 Gibson could allege no facts under which its defense might be meritorious. It will be stricken

12 without leave to amend.

13 C. Selective Enforcement

14        Gibson's eleventh affirmative defense alleges: "The Government's Complaint represents

15 selective enforcement against a small business, not substantially justified, and without a

16 reasonable basis in law or fact." Doc. 5 at 20.

17        Selective enforcement is a defense in a civil enforcement action. United States v.

18 McGraw-Hill Companies, Inc., 2014 WL 1647385, at *11 (C.D. Cal. Apr. 15, 2014) (citing, inter

19 alia, Church of Scientology v. Comm'r, 823 F.2d 1310, 1320-21 (9th Cir. 1987)). As the United

20 States set forth and Gibson agreed, selective enforcement requires a showing that "(1) that others

21 are generally not prosecuted for the same conduct; and (2) the decision to single out the

22 defendant was based upon impermissible grounds such as race, religion, or the exercise of

23 constitutional rights, or that there was no rational basis for the difference in treatment." Doc. 13-

24 1 at 10; Doc 16 at 11; see Sherman v. City of Davis, 2008 WL 553632, at *10 (E.D. Cal. Feb. 26,

25 2008) (citing Church of Scientology, 823 F.2d at 1320-21); Alternative Community Health Care

26 Co-Op., Inc. v. Holder, 2011 WL 6216964, at *4 (S.D. Cal. Dec. 13, 2011) (citation omitted)

27 (holding that failing the rational basis standard—that the enforcement is malicious, irrational or

28 arbitrary—can satisfy the impermissible discrimination component of selective enforcement

1   claim); see also Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that an

2   absence rational basis for different treatment can be the basis for a successful equal protection

3   claim). The Court cannot say this defense would lack merit under any set of facts that Gibson

4   might allege. It is not insufficient as a matter of law.

5         The United States has presented four cases where the United States has sought civil

6   penalties related to releases of anhydrous ammonia. Doc. 13-1 at 10 (citing United States v.

7   Millard Refrigeration Services, Inc., S.D. Ala. No. 1:15-cv-00186 (S.D. Ala. 2015); United

8   States v. Colubus Mfg. Inc., N.D. Cal. No. 12-cv-0471 (N.D. Cal. 2012); United States v. Suiza

9   Dair Corp., D.P.R. No. 3:12-cv-1810 (D.P.R. 2012); United States, et al. v. D.D. Williamson and

10  Co., Inc., W.D. Ky. No. 3:09-cv-0633 (W.D. Ky. 2009)). It argues, even assuming the treatment

11  was different, that Gibson has offered no explanation of any impermissible purpose for the

12  different treatment. Based on those failures the United States alleges that Gibson's selective

13  prosecution defense should be stricken as insufficiently pled. Gibson recognizes as much but

14  suggests that because it "has had no opportunity whatsoever to conduct discovery as to the U.S.

15  EPA and Department of Justice's actions, evidence, theories, and strategies," it should be

16  excused from having to provide any detail until after it has an opportunity to conduct discovery.

17  Doc. 16 at 11. It suggests that because the defense of selective enforcement is a recognized

18  defense that could apply to this type of action that it should not be stricken despite Gibson's

19  failure to allege any facts in its answer to support that defense. Id. Gibson is mistaken. This

20  defense is insufficiently pled. It will be stricken.

21        In its briefing, Gibson seems to contend that the different treatment that would support

22  its affirmative defense is that the United States elected to litigate this matter, seeking civil

23  penalties, rather than pursuing an administrative option. Doc. 16 at 11-12. Rather than

24  challenging the Government's decision to seek penalties, Gibson challenges the means by which

25  it seeks those penalties and the amount it seeks. Gibson explains that—applying the September

26  30, 1998, penalty matrix that it references—the total penalty that should be assessed against it is

27  dramatically lower than the $1.1 million in civil penalty that the United States seeks. Doc. 16 at

28  12. Specifically, Gibson outlined seven other instances where the EPA, using the administrative

1  enforcement process, obtained penalties for releases in amounts not exceeding $100,000. It

2  further alleges that there is no rational basis for the Government's departure from its ordinary

3  administrative enforcement procedure. The information contained in Gibson's briefing is the

4  type of allegation that explains why Gibson believes that the penalties that the United States

5  seeks are being selectively enforced; it would have placed the United States on fair notice of the

6  defense; it should have been pled with Gibson's affirmative defense.

7        The United States argues that the newly articulated basis for Gibson's affirmative defense

8  is insufficient as a matter of law; that the Government's decision to seek penalties through

9  litigation rather than through an administrative process is a legally insufficient defense and is

10  redundant of Gibson's other defenses.[8] The Court agrees in the latter regard in part. To the extent

11  that Gibson seeks to allege that the penalties sought were required to have been sought through

12  the administrative process, it is redundant of Gibson's tenth cause of action. See Answer at p. 20

13  ("The Government's Complaint is barred by its failure to exhaust administrative remedies.") To

14  the extent that Gibson seeks to allege that the penalties sought are greater than authorized by the

15  law and fact alleged in the complaint—regardless of the merit of that defense—it is redundant of

16  Gibson's twelfth cause of action. See Answer at p. 20 ("The Government has not provided facts

17  or reasoning to support the proposed penalties.") However, to the extent that Gibson seeks to

18  allege that the United States seeks penalties against it in court rather than through the

19  administrative process for purposes malicious, irrational or arbitrary, its defense is distinct.

20        The United States contends that its choice of enforcement mechanism—whether

21  administrative or judicial—cannot be the basis of a selective enforcement defense because the

22  United States is not obliged to select "one particular enforcement strategy … over another." Doc.

23  17 at 8 (quoting Association of Irritated Residents v. EPA, 494 F.3d 1027, 1033 (D.C. Cir.

24

25  [8] The United States also expresses that it is unsure, even after considering Gibson's opposition, whether Gibson's "defense [is] based on the sufficiency of the United States' case-in-chief, requested remedy, and method of

26  enforcement or a defense based on impermissibly-motivated enforcement." Doc. 17 at 7. As the Court reads Gibson's opposition, Gibson's defense first alleges that the United States departed from its normal practice of

27  administratively enforcing releases like the release at issue in this case – that others are generally not prosecuted for this conduct.  Second, it alleges that there is no rational basis for the difference in treatment. Although that defense

28  is not what the Court understood from the pleadings in Gibson's answer, it is the defense that they now seem to advance.

14

1  2007). Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(a)(3) & (b), authorizes the EPA to

2  issue an administrative penalty, issue a compliance order, or commence a civil action for

3  injunctive relief and/or civil penalties whenever it finds that the CAA has been violated. The

4  Court agrees that there United States' decision to bring a civil action, rather than administratively

5  assess penalties or issue a compliance order, is presumptively valid. See United States v.

6  Armstrong, 517 U.S. 456, 464 (1996) (A "presumption of regularity supports … prosecutorial

7  decisions and, in the absence of clear evidence to the contrary, courts presume" that officials

8  have properly discharged their duties.) However, if Gibson presents "clear evidence" that the

9  United States' decision was based on some arbitrary classification, it could prevail in this

10  defense. See Armstrong, 517 U.S. at 465. Even action that the United States is expressly

11  authorized to take would violate equal protection if taken for some impermissible or arbitrary

12  purpose. See Armstrong, 517 U.S. at 465. This Court cannot now determine that Gibson's

13  selective enforcement defense would completely lack merit if alleged as Gibson has suggested.[9]

14  See Martex Farms, S.E. v. United States E.P.A., 559 F.3d 29, 32-33 (1st Cir. 2009) (suggesting

15  the a selective enforcement defense could lie against the EPA); Chemical Mfrs. Ass'n v. United

16  States E.P.A., 870 F.2d 177, 243 (5th Cir. 1989) (same); U.S. v. Rineco Chemical Industries,

17  Inc., 2009 WL 801608, at *13 (E.D. Ark. Mar. 4, 2009) (same). Gibson will be afforded leave to

18  amend this affirmative defense.

19  D. Reservation of Additional Defenses

20      Gibson's thirteenth affirmative defense reads: "Gibson presently has insufficient

21  knowledge or information on which to form a belief as to whether it may have additional, as yet,

22  unstated defenses available. Gibson reserves the right to assert additional defenses revealed by

23  further investigation or discovery." Answer at p. 20.

24      The United States contends and Gibson agrees that Gibson's reservation of defenses is

25  appropriately stricken. Doc. 13-1 (citing Miller v. S&S Hay Co., 2013 WL 4679647, at *3 (E.D.

26  
27  ───────────────
    [9] Gibson is warned that before discovery in support of a selective enforcement defense will be authorized, it must make a "credible showing of different treatment of similarly situated persons." Armstrong, 517 U.S. at 465. The Court will not authorize an expedition into the United States' decision to litigate this matter without first determining that other similarly situated stationary source operators that been found to have made similar releases were not treated the same.

28

1  Cal. Aug. 30 2013)). The Court agrees. Any additional affirmative defenses must be raised in

2  compliance with Rule 15. Gibson's thirteenth affirmative defense will be stricken without leave

3  to amend.

4  **V. Order**

5      Based on the foregoing, IT IS HEREBY ORDERED that:

6     1. Gibson's third and thirteenth affirmative defenses are STRICKEN without leave to

7       amend;

8     2. Gibson's sixth and eleventh affirmative defenses are STRICKEN with leave to amend.

9

10

11  IT IS SO ORDERED.

12  Dated:  April 25, 2016  _____

                             SENIOR DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28