1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:15-cv-1900-AWI-SKO |
| Plaintiff, | **ORDER DENYING MOTION TO** |
| v. | **STRIKE PORTIONS OF FIRST** |
| | **AMENDED COMPLAINT** |
| **GIBSON WINE CO.,** | |
| Defendant. | (Doc. 39) |
| _____/ | |

### I. Introduction

The United States Environmental Protection Agency ("United States" or "Government") brought the instant environmental protection action against Gibson Wine Company ("Gibson") related to Gibson's winemaking activities in Sanger, California. This action proceeds on the Government's First Amended Complaint ("FAC"), filed on December 1, 2016. On December 13, 2016, Gibson filed a motion to strike portion of the Government's first and second causes of action and the entirety of the Government's third cause of action. Gibson contends that many of the Government's allegations are premised on inapplicable regulatory authority and now-vacated findings by the California Division of Occupational Safety and Health ("DOSH").

The United States responds that Gibson's motion is not the appropriate subject of a motion to strike—the motion seeks dismissal of three of the Government's four causes of action and injects factual allegations that conflict with the allegations of the complaint. The United

States contends, even if the Court were to hear the substance of the claims despite Gibson's use of the incorrect procedural vehicle, Gibson's arguments are without merit.

In Gibson's reply, it disclaims any intent to challenge the legal sufficiency of the Government's complaint. It further explains that its reference to factual material outside of the complaint "is solely for the purpose of explaining the significance of the accurate statement of statutory defenses and elements of" the Government's claims. Doc. 48 at 2. Gibson asks that its motion only be considered as a motion to strike pursuant to Rule 12(f).

For the following reasons, Gibson's motion to strike will be denied.

## II. Background

This Court summarized the allegations of the Government's original complaint in its April 25, 2016 order. Doc. 21. In short, the Court explained the alleged release of anhydrous ammonia from the Gibson facility and the Government's three original corresponding causes of action.

Gibson's winemaking facility in Sanger, California, uses refrigeration systems requiring the storage and use of anhydrous ammonia. The United States alleges that on September 11, 2012, the Gibson facility experienced a 284-pound release of anhydrous ammonia from its refrigeration system. A cloud of the ammonia formed and the facility was evacuated. One of Gibson's contract employees died from exposure to the ammonia.

The Government's three original causes of action were as follows: (1) violation of the general duty clause of Section 112(r)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r)(1), premised on Gibson's alleged failure to meet ten requirements relating to ammonia storage and use; (2) violation of Section 103 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9603, based on delayed notification of the National Response Center ("NRC") after the alleged release of ammonia in a reportable quantity; and (3) violation of Section 304 of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004(a)(1), based on delayed notification of the State Emergency Response Commission ("SERC") after the alleged release of  ammonia in a reportable quantity. After the Court's April 25, 2016 order, the Government amended its complaint. *See* Docs. 35

(granting unopposed motion to amend), and 36 (Government's FAC). The three claims that the Court previously detailed were re-alleged, and the Government alleged a fourth cause of action (that it inserted as its first cause of action)—violation of the Risk Management Plan ("RMP") regulations established under Section 112(r)(7) of the CAA, applicable only to facilities storing regulated substances exceeding a threshold amount, (to wit, 10,000 pounds of anhydrous ammonia) based on alleged failures to meet nine requirements relating to ammonia storage and use, different from the ten failures alleged under the general duty clause of Section 112(r)(1) of the CAA.

The Government's first cause of action, violation of the RMP regulations of Section 112(r)(7) of the CAA is applicable only if it can show that Gibson operated a process involving the use of anhydrous ammonia in an amount exceeding 10,000 pounds. *See* 40 C.F.R. §§ 68.1, 68.10, 68.115, 68.130. The Government's section cause of action, violation of the General Duty Clause of Section 112(r)(1) of the CAA applies if Gibson used any amount of anhydrous ammonia at its facility. *See* 42 U.S.C. § 7412(r)(1); 40 C.F.R. § 68.1 ("[T]hreshold quantities[] and accident prevention regulations promulgated under this part do not limit … the general duty provisions under [S]ection 112(r)(1).")

### III. Legal Standard

**A. Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike "any redundant, immaterial, impertinent, or scandalous matter." A matter is "redundant" if it presents "the needless repetition of allegations or the inclusion of allegations that 'are foreign to the issue.'" *Lexington Ins. Co v. Energetic Lath & Plaster, Inc.*, 2015 WL 5436784, *10 (E.D. Cal. Sept. 15, 2015) (quoting Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D.Cal.2005)). A matter is immaterial if it has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Fogerty*, 984 F.2d at 1527. A matter is scandalous if it improperly casts a derogatory

light on a party to the action. *Lexinton Ins. Co.*, 2015 WL 5436784 at *10. If an allegation does not fall within one of those categories it is not appropriately stricken under Rule 12(f).

The purpose of Rule 12(f) is to "avoid the expenditure of time and money that … arise[s] from litigating spurious issues by dispensing with those issues prior to trial." *Sidney –Vinstein v. A.H.Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *accord Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). However, because of the limited importance of pleadings in federal practice and because motions to strike often needlessly extend litigation, broad motions to strike are generally disfavored. *See Andren v. Alere, Inc.*, 2017 WL 168605, *3 (S.D. Cal. Jan. 17, 2016); *Kratz Aerial Ag Service, Inc. v. Slykerman*, 2016 WL 1090361, at *2 (E.D. Cal. Mar. 21, 2017) (citing *Spring v. Fair Isaac Corp.*, 2015 WL 7188234, at *2 (E.D. Cal. Nov. 16, 2015)); *Atcherley v. Hanna*, 2016 WL 70028, at *1 (E.D. Cal. Jan. 6, 2016) (citation omitted). Such motions should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the proceedings." *Andren*, 2017 WL 168605 at *3 (quoting *Colaprico v. Sun Microsys. Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991)); *see Park v. Welch Foods, Inc.*, 2014 WL 1231035, *1 (N.D. Cal. Mar. 20, 2014) ("Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike.") (quoting *In re Walmart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609, 614 (N.D. Cal. 2007)).

In ruling on a motion to strike, much like ruling on a motion to dismiss for failure to state a claim, a court must assume that all of the well-pled factual allegations of the complaint are true and view the pleading in the light most favorable to the pleader. See *Whittlestone*, 618 F.3d at 973 ("[C]ourts may not resolve 'disputed and substantial factual or legal issues in deciding a motion to strike.'"); Lexington Ins. Co. v. Energetic Lath & Plaster, Inc., 2015 WL 5436784, *11 (E.D. Cal. Sept. 15, 2015); Patterson v. Two Fingers LLC, 2015 WL 2345658, *3 (D. Ariz. May 15, 2015); Holmes v. Elec. Document Processing, Inc., 966 F.Supp.2d 925, 930 (N.D. Cal. 2013). A motion to strike does not test the substantive sufficiency of a pleading. See Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.") (citation and internal quotation

4

marks omitted); Granger v. Lowe's Home Centers, LLC, 2014 WL 4976134, *3 (E.D. Cal. Oct. 3, 2014). However, insofar as a motion incorrectly designated a motion to strike could have been properly brought as a motion to dismiss for failure to state a claim, a court may construe it as such. Knapp v. Art.com, Inc., 2016 WL 3268995, *6 (N.D. Cal. June 15, 2016); Granger, 2014 WL 4976134 at *3; Rhodes v. Placer County, 2011 WL 1302240, *22 (E.D. Cal. Mar. 31, 2011). Similarly, if a party improperly submits evidence in support of a motion to strike, the court may construe that motion as a motion for summary judgment. See Mullane v. Hilton Hotels Corp, 634 F.Supp.2d 1130, 1157 (D. Haw. 2009) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 404 (3d ed. 2004)). A court should only consider the underlying merits of an improperly designated motion if construing the motion in that manner would not deprive the non-moving party of a meaningful opportunity to respond. See Ewing v. Megrdle, 2014 WL 2159363, *18 (C.D. Cal. May 23, 2014) (refusing to address the merits of a motion filed using an improper procedural vehicle because the non-moving party had no meaningful opportunity to respond); Garcia v. Valenzuela, 2014 WL 683795, *1 (C.D. Cal. Feb. 18, 2014) (hearing the merits of claims filed using an improper procedural vehicle only after affording the non-moving party an additional opportunity to respond).

**B. Motion to Dismiss for Failure to State a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the

complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

## IV. Discussion

**A. Gibson's First Motion to Strike – The Government's Allegations Regarding Statutory and Regulatory Framework**

Gibson's first motion asks the Court to strike paragraphs 19, 22, and 23 of the FAC. Doc. 39-1 at 4-6.[1] Those paragraphs are all part of the Government's explanation of the statutory and regulatory framework of the CAA. Paragraph 19 reads:

> "Process" is defined in 40 C.F.R. § 68.3 to mean "any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or any combination of these activities." "Covered Process" means "a process that has a regulated hazardous substance present in more than a threshold quantity as determined under [40 C.F.R.] § 68.115." 40 C.F.R. § 68.3.

FAC at ¶ 19. Gibson takes issue with the Government's omission of part of 40 C.F.R. § 68.3. Section 68.3 reads in full:

> Process means any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or combination of these activities. For the purposes of this definition, any group of vessels that are interconnected, or separate vessels that are located such that a regulated substance could be involved in a potential release, shall be considered a single process.

40 C.F.R. § 68.3. Gibson contends that the Government's failure to explain that a single "process," within the meaning of section 68.3, is limited to those vessels that are interconnected and that multiple processes can exist within the same facility is incomplete and "may mislead the Court." Doc. 39-1 at 5. Paragraph 19 is not redundant, immaterial, impertinent, or scandalous. Indeed, Gibson does not contend that it is. Because paragraph 19 of the FAC does not fall within one of categories articulated by Rule 12(f), it is not appropriately stricken.

---

[1] Gibson's reply suggests that the Court should strike paragraph 21 as well as 19, 22, and 23. Doc. 48 at 3. Gibson's original motion does not include any suggestion that Gibson sought an order striking paragraph 21. Doc. 39-1 at 4-6. Even if Gibson had included paragraph 21 in its motion to strike, this Court would deny that motion for largely the same reasons that it denies the remainder of the motion to strike paragraphs in this section.

Because Gibson was adamant that the Government's characterization of its motion as a disguised motion to dismiss "mis-states the motion's intent and purpose," the Court will not construe Gibson's arguments through the lens of a more appropriate procedural device. Doc. 48 at 2.[2]

Next, Gibson moves to strike paragraphs 22 and 23 of the Amended Complaint because "they are irrelevant and impertinent to this matter" because they rely on 29 C.F.R. § 1910.119 which is inapplicable in light of the federally-approved California Occupational Safety and Health Administration ("Cal/OSHA") regulatory scheme. Doc. 39-1 at 5. Paragraphs 22 and 23 read in full:

> 22. Pursuant to 40 C.F.R. § 68.10(d), a Covered Process is subject to Program 3 requirements if the process does not meet one or more of the Program 1 eligibility requirements set forth in 40 C.F.R. § 68.10(b), and if either of the following conditions is met: (a) the process is listed in one of the specific North American Industry Classification System codes found at 40 C.F.R. § 68.10(d)(1); or (b) the process is subject to the United States Occupational Safety and Health Administration ("OSHA") process safety management standard set forth in 29 C.F.R. § 1910.119. A stationary source that has had an accidental release of a regulated substance within five years is not eligible for Program 1. 40 C.F.R. § 68.10(b).

> 23. Pursuant to 40 C.F.R. § 68.12(d) the owner or operator of a stationary source that is subject to Program 3 prevention requirements must undertake certain tasks including, but not limited to: development and implementation of a management system (as provided in 40 C.F.R. § 68.15); the development and implementation of prevention program requirements, which include the compilation of process safety information, written standard operating procedures, training, a mechanical integrity program, management of change procedures, and pre-startup safety review procedures (as provided in 40 C.F.R. §§ 68.90-68.95

FAC at ¶¶ 22-23. A brief summary of the statutory authority under which Section 1910.119 was promulgated, the state plan system of the Occupation Safety and Health Act of 1970, and the

---

[2] Gibson appears to fundamentally misapprehend the purpose of a motion to strike. It repeats the Government's argument that the paragraphs that it seeks to have stricken are "at the heart of" Plaintiff's first claim to relief, "as an element to be proved" in an apparent attempt to explain the purpose of its motion. Doc. 48 at 4. Allegations should only be stricken if they are *wholly unrelated* to the claims or defenses at issue, is needlessly repetitive or insulting. If Gibson believes that the United States misstates or misreads the law such that the claims are without merit—e.g., the cited federal regulations do not apply because the state standard applies—it should move to dismiss for failure to state a claim. If Gibson believes that the United States lacks evidence to support its claims—e.g., Gibson did not have a process containing more than 10,000 pounds of anhydrous ammonia—it should move for summary judgment.

1   Clean Air Act Amendments of 1990 is required determine whether the paragraphs should be

2   stricken.

3          Section 112(r) of the CAA was enacted to effect prevention of accidental releases of

4   airborne pollutants by stationary source operators and to minimize the consequences of any such

5   releases. 42 U.S.C. § 7412(r)(1). To determine which safety requirements a stationary source

6   operator is required to comply with, a determination must be made regarding into which RMP

7   Program Category ("Program") its facility falls. 40 U.S.C. § 68.12. For purposes of the CAA,

8   that determination is made with reference to 40 C.F.R. § 68.10(b-d). Part of the Program 3

9   inquiry asks whether the Gibson process is subject to the safety management standards set by 29

10  C.F.R. § 1910.119. If Gibson's stationary site in ineligible for Program 3 because 29 C.F.R. §

11  1910.119 does not apply to it, then it would fall into Program 2 (assuming that it meets the

12  threshold quantity of anhydrous ammonia requirement), which is defined residually. 40 C.F.R. §

13  68.10(c). Gibson contends that 29 C.F.R. § 1910.119 is a standard promulgated pursuant to 29

14  U.S.C. § 655(a) that has been displaced by the state plan agreement between the Secretary of

15  Labor and the State of California. Although Gibson is correct that Section 1910.119 was

16  originally promulgated pursuant to 29 U.S.C. § 655(a), it was later specifically reauthorized

17  under the Clean Air Act Amendments of 1990, PL 101–549 (Nov. 15, 1990), codified at the

18  historical and statutory notes of 29 U.S.C. § 655. *Process Safety Management of Highly*

19  *Hazardous Chemicals; Explosives and Blasting Agents*, 57 FR 6356-01, 6403 ("Section

20  1910.119 is also issued under Section 304, Clean Air Act Amendments of 1990….") *See Request*

21  *for Information: Accidental Release Prevention Requirements: Risk Management Programs*

22  *Under the Clean Air Act, Section 112(r)(7)*, 79 FR 44604-1, 44605 (July 32, 2015).

23          The Occupational Safety and Health Act of 1970 requires the Secretary of Labor to

24  promulgate occupational safety or health standards, generally applied to all non-state employers.

25  29 U.S.C. §§ 652(6), 653, 655(a). The Secretary of Labor is charged with enforcement of those

26  standards by issuing citations or initiating judicial enforcement proceedings. 29 U.S.C. §§ 658,

27  662. In enacting the Occupational Safety and Health Act of 1970, Congress provided a

28  mechanism for cooperative federalism—it allows state governments to create plans for state

enforcement of any occupational safety or health issue with respect to which the Secretary of Labor has promulgated a standard under the 29 U.S.C. § 655. 29 U.S.C. § 667(b). If a state elects to do so, it is required to submit a state plan, setting forth standards and enforcement policies to be approved by the Secretary of Labor for enforcement by the state. *Id*. Among other things, the Secretary of Labor must confirm that the state's proposed standards "are or will be at least as effective in providing safe and healthful employment and places of employment as the standards" promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 655. 29 U.S.C. § 667(c). After the Secretary of Labor approves a state plan and confirms the efficacy of the state's execution of the plan, the standards promulgated under 29 U.S.C. § 655 are no longer applicable in that state and Secretary of Labor no longer has the authority to commence enforcement actions within that state. 29 U.S.C. § 667(e); 29 C.F.R. § 1902.42(c). In essence Section 667 allows for a form of reverse preemption by the state after the plan is finally approved.

California entered into a state plan that was initially approved by the Secretary of Labor on May 1, 1973. 29 C.F.R. 1952.7(a). That plan took effect on August 19, 1977. *Certification of Completion of Developmental Steps for California Plan*, 42 Fed. Reg. 41857 (Aug. 19, 1977). According to the Department of Labor, no secretarial final approval has been made pursuant to 29 U.S.C. § 667(e).[3] *See, State Plans ... Changes to the Level of Federal Enforcement for Alaska, Arizona, California...*, 65 FR 36617-01 (clarifying that California is not one of the states that has received final approval pursuant to Section 667(e), which would result in the United States relinquishing both Federal OSHA standards and enforcement authority)*; compare* 29 C.F.R. § 1952.17 (noting that the Indiana plan received final approval)*; with* 29 C.F.R. § 1952.7 (containing no such notification for California); *cf.*, *Indiana State Plan; Final Approval Determination*, 51 FR 34206-01 (Sept. 26, 1986).

Defendant has submitted an exhibit in support of its motion to strike that defendant characterizes as an agreement between Fed/OSHA and the California Division of Occupational

---

[3] *See* Table of OSHA-Approved State Plans, https://www.osha.gov/dcsp/osp/approved_state_plans.html#ftn, (last accessed March 17, 2017); California State Plan Overview, https://www.osha.gov/dcsp/osp/stateprogs/california.html, (last accessed March 17, 2017); § 18:62.Status of state plan activity, 2 Guide to Employment Law and Regulation § 18:62.

Safety and Health ("DOSH") approving the State OSHA Plan "establishing state standards and state enforcement only in private sector workplaces." Doc. 39-3 at 3-5[4]; Doc. 39-5 at ¶ 5. Defendant suggests that agreement results in only California regulations being applicable to it. Doc 39-1 at 6; Doc 39-3 at ¶ III. Defendant mischaracterizes the impact of that document. The relevant sections read, in part:

> II. This agreement updates and sets forth the scope of the exercise of Federal authority under section 18(e) of the Act (29 U.S.C. 657(e)) in the State of California with respect to occupational safety and health standards promulgated under Section 6 the Act (29 U.S.C. 655), by specifying areas of State responsibility and delineating continuing Federal responsibilities.

> III. This agreement is based on a finding by the Assistant Secretary of Labor for Occupational Safety and Health under section 18(e) of the Act (29 U.S.C. 667(e)) that the State has achieved operational status in the issues covered by the California Occupational Safety and Health Plan because the State has met the criteria specified by 29 CFR 1954.3. Therefore, discretionary Federal enforcement authority under section 18(e) of the Act (29 U.S.C. 667)) will not be initiated with regard to Federal occupational health and safety standards in issues covered under 29 CFR Part 1910, 29 CFR Part 1915, 29 CFR Part 1917, 29 CFR Part 1926, and 29 CFR Part 1928, except [with regard to federal employers, federal lands, tribal employers, maritime jurisdiction, and certain investigatory and anti-retaliation functions.]

Doc. 39-3 at ¶¶ II-III. Specifically, 29 U.S.C. § 667(e) provides that the Secretary of Labor "may, but shall not be required to, exercise his [enforcement] authority … with respect to comparable standards promulgated under section 655 … until he determines" that the state plan is actually effective according to the standards set out in 29 U.S.C. § 667(c). After the Secretary of Labor make the final efficacy conclusion provided for in section 667(e), his enforcement authority "and the standards promulgated under section 655 … shall not apply…." 29 U.S.C. § 667(e). The agreement cited by Gibson is the Secretary's election not to exercise discretionary authority pursuant to 29 U.S.C. § 667(e). If the Secretary of Labor had already finally concluded that the California State Plan was effective, he would have no discretionary authority to exercise under 29 U.S.C. § 667(e). In sum, although the Secretary of Labor has elected not to exercise discretionary authority pursuant to 29 U.S.C. § 667(e) during the pre-final-efficacy determination

---

[4] The document submitted is publicly available at the California Department of Industrial Relations website at https://www.dir.ca.gov/dosh/documents/FED-OSHA-CA-Operational-Status-Agreement-signed-2014.04.30.pdf (last accessed March 17, 2017).

1   period, the regulations promulgated pursuant to 29 U.S.C. § 655 have not yet been displaced by a

2   final determination of the efficacy of the California State Plan pursuant to 29 U.S.C. § 667(e).[5]

3         As noted, a threshold inquiry for determining Gibson's Program 3 eligibility is whether

4   29 C.F.R. § 1910.119 applies. That section was promulgated pursuant to 29 U.S.C. § 655 (in

5   addition to other authority). Because the rules promulgated pursuant to 29 U.S.C. § 655 have not

6   been displaced pursuant to a final efficacy determination of the California State Plan pursuant to

7   29 U.S.C. § 667(e), Gibson's argument for the inapplicability of 29 C.F.R. § 1910.119 is

8   incorrect.

9         Moreover, the United States is not required to show that Section 1910.119 was violated,

10   only that it was applicable such that Gibson's facility falls within Program 3. As such, the

11   *applicability* of Section 1910.119 to Gibson is an element of the Government's claim. That is

12   precisely the kind of argument that should be addressed on a motion to dismiss for failure to state

13   a claim. Paragraphs 22 and 23 are not impertinent—i.e., they are not non-essential or unrelated to

14   the Government's claim for relief. They comprise part of the basis for the Government's claim

15   that first claim: Gibson owned or operated a stationary source subject to regulation as a Program

16   3 facility under Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and failed to take required

17   safety precautions. Insofar as Gibson sought to strike paragraphs 22 and 23 as impertinent—i.e.,

18   consisting of statements that do not pertain, and are not necessary, to the issues in question—the

19   Court will deny that motion as well. Again, whether a claim pursuant to Section 112(r)(7), 42

20   U.S.C. § 7412(r)(7), is valid against Gibson depends on whether Gibson is subject to Section

21   1910.119. Paragraphs 22 and 23 (and 41), referencing applicable federal regulations, seek to

22   answer that question. Accordingly, even if the United States were wrong, and Section 112(r)(7),

23   42 U.S.C. § 7412(r)(7), does not apply because California entered into an agreement with the

24   Secretary pursuant to 29 U.S.C. § 667(b) and a final determination of the efficacy of that

25

26   _____

27   [5] *See also*, Doc. 39-3 at ¶ VII ("If evaluation and monitoring reveal that State operations fail in substantial manner to
     be at least as effective as the Federal program, the Regional Administrator will make a prompt recommendation for
     the resumption of the exercise of Federal enforcement authority under section 18(e) of the Act, 29 U.S.C. 667(e),

28   whenever, and to the degree necessary, to assure occupational safety and health protection to employees in
     California.")

program was made pursuant to subsection (e) which preempts the applicable federal standards, those paragraphs are not appropriately stricken; although they would be appropriately dismissed.

Gibson's first motion to strike will be denied.

**B. Gibson's Second Motion to Strike – The Government's First Cause of Action**

Gibson's second motion to strike addresses paragraphs 37, and 39 to 41 of the FAC, relating to the Government's Section 112(r)(7), 42 U.S.C. § 7412(r)(7), RMP violation claim. It is based in part upon the argument that 29 C.F.R. § 1910.119 is inapplicable to Gibson. For the reasons set forth in the previous section, the portion of Gibson's second motion to dismiss that is based on the inapplicability of 29 C.F.R. § 1910.119 will be denied.

Gibson's second motion to dismiss is also based in part upon the allegation that there is "insufficient evidence of 10,000 pounds of ammonia in any process" and that the allegations of Gibson operating a process in excess of 10,000 pounds should be stricken as "erroneous." Doc. 39-1 at 7. Gibson submits evidence in support of that contention. Gibson does not seek judicial notice of that document. Indeed, the facts contained in that report are not subject to judicial notice.[6] More to the point, that an allegation is allegedly false or erroneous is not a sufficient basis for a motion to strike. Gibson's motion will be denied on that basis.

**C. Gibson's Third Motion to Strike – The Government's Second Cause of Action**

Gibson's Third motion to strike is directed at paragraphs 54 through 73 of the FAC – all of the Government's Section 112(r)(1), 42 U.S.C. § 7412(r)(1), general duty clause violation claim. Gibson contends that the general duty clause "sets forth only three obligations that can be violated, not ten as the Complaint asserts." Doc. 39-1 at 7. As a threshold matter, the parties agree that the general duty clause of Section 112(r)(1) articulates three components of a

---

[6] A motion to strike could be granted based upon material that is the appropriate subject of judicial notice. *In re New Century*, 588 F.Supp.2d 1206, 1220 (C.D. Cal. 2008) (citing *SEC v. Sands*, 902 F.Supp. 1149, 1165 (C.D. Cal. 1995)). Facts which are subject to judicial notice are those not subject to reasonable dispute because they (1) are "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Even assuming that the EPA inspection report and EPA findings are public documents, subject to judicial notice, the Court cannot take judicial notice of a matter of public record in order to consider "the truth of the facts recited therein." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *accord Warwick v. Bank of New York Mellon*, 2016 WL 2997166, *11 (C.D. Cal. May 23, 2016) (collecting cases). The court may only take judicial notice of the existence of the document. *See id*.

stationary source owner's duty: (1) "identify hazards which may result from … releases using appropriate hazard assessment techniques," (2) "design and maintain a safe facility," and (3) "minimize the consequences of accidental releases." 42 U.S.C. § 7412(r)(1).

The Government's complaint alleges (and the Government contends) that each of the ten "instance[s] of noncompliance" with industry standards alleged in the FAC was a "separate violation" of the general duty created by Section 112(r)(1). FAC at ¶¶ 53-72; Doc. 45 at 16-17. For each violation identified, the Government seeks a separate civil penalty pursuant to Section 113(b), 42 U.S.C. § 7413(b). FAC at ¶ 74; Doc. 45 at 16. For instance, the Government's first alleged violation of the general duty clause is that Gibson's "equipment was not labeled adequately, contrary to industry standards…." FAC at ¶ 54. The Government set out relevant ammonia safety standards upon which it relied[7] and explained that the alleged violation breaches all three of the components of the general duty clause. FAC 36 at ¶¶ 54-55.

Gibson's objection to allegation of violation in terms of alleged violations of industry standards rather than the three components of the general duty appears to be threefold: (1) by framing its claims in terms of noncompliance with industry standards as violations of the general duty, the Government seeks to expand the scope of the general duty beyond that intended by Section 112(r)(1); (2) the Government's framing of its general duty clause violations is a "back door" attempt to enforce the RPM regulations without making the requisite threshold quantity showing; and (3) by seeking separate penalties for each alleged violation, the Government violates Gibson's right to due process. On those bases, Gibson asks the Court to, "[a]t a minimum," strike the "ten alleged violations" and "require[] [the Government] to state violations set forth in the CAA § 112(r)(1) only, based on the black letter of the statute…."

As noted, the general duty created by Section 112(r)(1) of the CAA requires a stationary source owner to identify hazards that may result from a release, maintain a safe facility, and minimize the risk of accidental releases. 42 U.S.C. § 7412(r)(1). Each of those duties requires an

---

[7] Specifically, the FAC explains that it looks to bulletins and guidance documents from the International Institute of Ammonia Refrigeration ("IIAR") and the American National Standards Institute ("ANSI") for industry standards. Whether those documents provide the appropriate industry standards is a question of fact that this Court does not now resolve. *See, e.g., Starbucks Corporation v. Amcor Packing Distribution*, 2016 WL 3543371, *13 (E.D. Cal. June 24, 2016); *Aziz v. Air India, Ltd.*, 658 F.Supp.2d 1144, 1154 (C.D. Cal. 2009).

understanding of industry standards and each can doubtlessly be violated in a multitude of ways. Each of the violations alleged by the Government is accompanied by specific industry standards. Regardless of the framing of those allegations, each of the Government's allegations that Gibson failed to comply with industry standards weighs on whether the general duty created Section 112(r)(1) was violated. Those allegations are not immaterial or impertinent. Even assuming that Gibson is correct that only three violations of Section 112(r)(1) are cognizable—failure to identify hazards, failure to maintain a safe facility, and failure to minimize the risk of accidental releases—the present "violations" would serve as alternate theories for each cause of action. The allegations are not redundant. Based on the authority presented, the Court in unconvinced that the violations of the general duty clause of Section 112(r)(1) alleged by the government are improperly pled. Even assuming those allegations should have been framed in another fashion, the purposes of Rule 12(f) are not implicated.

Second, Gibson is correct that many of the alleged violations of the general duty clause of Section 112(r)(1) overlap with the claims alleged pursuant to the RMP regulations. *E.g., compare* FAC at ¶ 54 (Gibson's "equipment was not labeled adequately, contrary to industry standards requiring all ammonia piping to have appropriate markers to indicate the use of the pipe and arrows to indicate the direction of the flow. IIAR Bulletin No. 109, Sec. 4.7.6; ANSI/IIAR 2-2008, Sec. 10.5; IIAR Bulletin No. 114.") *with* FAC at ¶¶ 45 ("40 C.F.R. § 68.65(d)(2) required [Gibson] to document that its process equipment complies with recognized and generally accepted good engineering practices." Gibson's "equipment was not labeled adequately, contrary to industry standards…. [¶] [Gibson] failed to document that its ammonia refrigeration equipment was adequately labeled.") However, each of the alleged general duty clause violations pursuant to Section 112(r)(1) is tied to a specific industry standard, and each RMP violation pursuant to Section 112(r)(7) is tied to a regulation found in 40 C.F.R. Part 68. If a stationary source owner operates a process containing less than the threshold quantity of a regulated substance, claims can only be brought under Section 112(r)(1); if the process contains more than the threshold quantity, claims can be brought pursuant to Section 112(r)(1) and Section 112(r)(7). The overlap that Gibson notes is largely a result of the documentation

1  requirements of 40 C.F.R. Part 60. Where processes contain more than the threshold quantity of

2  a regulated substance, stationary site owners are required to comply with industry safety

3  regulations based on Section 112(r)(1), and often document that compliance based on the

4  regulations issued pursuant to Section 112(r)(7). That overlap does not require the court to strike

5  any of the Government's allegations under Rule 12(f); it does not render the allegations

6  redundant, impertinent, immaterial, or scandalous.

7       Third, even assuming that multiple breaches of the general duty created by Section

8  112(r)(1), cannot result from separate "violation[s]," within the meaning of 42 U.S.C. § 7413(b),

9  for which separate civil penalties can be imposed, striking allegations seeking such penalties is

10 not appropriate. *See Whittlestone*, 618 F.3d at 973 ("Rule 12(f) does not authorize district courts

11 to strike claims for damages on the ground that such claims are precluded as a matter of law."

12 Such arguments are "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule

13 12(f) motion.")

14      None of the bases raised by Gibson is a valid basis for striking the Government's

15 separately alleged theories of relief. Gibson's third motion will be denied.

16 **D. Gibson's Fourth Motion to Strike: The Government's Third Cause of Action**

17      Gibson contends that the Government's CERCLA cause of action, based on Gibson's

18 failure to notify the National Response Center of the release, should be stricken in full "because

19 it is immaterial and redundant" in light of the Government's EPCRA cause of action for failure

20 to notify the State Emergency Response Commission. Doc. 39-1 at 14. The thrust of Gibson's

21 argument is that it does not believe that CERCLA and EPCRA can both apply to the release in

22 this case. Even if Gibson was correct, it should move to dismiss one or both of the causes of

23 action alleging violations of CERCLA and EPCRA for failure to state a claim. It should not

24 move to strike the entirety of the CERCLA cause of action as immaterial or redundant.

25      That said, this Court will briefly outline both causes of action and explain how they are

26 different such that the Government's allegations are not appropriately stricken as redundant.

27 First, as a general matter, "Congress enacted CERCLA in 1980 … in response to the serious

28 environmental and health risks posed by industrial pollution." *Chubb Customs Ins. Co. v. Space*

*Systems/Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009)) (internal quotation marks omitted). "Through a complex statutory framework, CERCLA provides for the 'liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.'" *Chubb Customs*, 710 F.3d at 956 (citation omitted). Relevant to this action, Section 103 of CERCLA requires "any person in charge of … [a] facility …, as soon as he has knowledge of any release … of a hazardous substance from such … facility in [a reportable] quantit[y],[8] [to] immediately notify the National Response Center" of the release. 42. U.S.C. § 9603(a).[9] As the Government correctly notes, a "release" of a hazardous substance, within the meaning of 42 U.S.C. § 9603(a), can include an emission into the environment – e.g., anhydrous ammonia into the ambient air. *See* 42 U.S.C. § 9601(8), (22).[10]

The Emergency Planning and Community Right-To-Know Act, EPCRA, enacted in 1986, created "a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and provide for emergency response in the event of health-threatening release[s]." *Steel Co. v Citizens for a Better Environment*, 523 U.S. 83, 86 (1998). EPCRA, like CERCLA, is designed to notify governmental authorities of releases. However, unlike CERCLA, EPCRA's purpose goes beyond cleanup—it seeks to ensure public

---

[8] For CERCLA purposes, anhydrous ammonia is a hazardous substance, reportable when released in a quantity of 100 pounds or greater. 40 C.F.R. § 302.4, issued pursuant to 33 U.S.C. § 1321(b)(4); *see* 42 U.S.C. § 9602(a-b).

[9] Gibson seems to suggest that CERCLA is inapplicable "airborne releases." Doc. 39-1 at 18. Gibson is simply wrong. Gibson's misunderstanding appears to be premised on its misreading of *Pakootas v. Teck Cominco Metals Ltd.*, 830 F.3d 975, 979 (9th Cir. 2016). In *Pakootas*, the Ninth Circuit addressed the definition of "disposal" of hazardous substances within the meaning of 42 U.S.C. § 9607(a)(3). *Id.* Broadly speaking, that section creates liability for cleanup expenses and related costs for one who "arranged for disposal or treatment … of hazardous substances." 42 U.S.C. § 9607(a)(3). The *Pakootas* court explained that "disposal"—as opposed to release—of hazardous substances does not include an "aerial deposition" or "emission" *Pakootas*, 830 F.3d at 983-984. *Pakootas* does not stand for the proposition that CERCLA does not apply to any airborne releases.

[10] Gibson also broadly claims that the CERCLA notification "requirement … excludes from its requirements release into a workplace," quoting in part the definition of "release," 42 U.S.C. § 9601(22): "[R]elease means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment…, but excludes (A) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons…." That exclusion simply prevents employees or others at a facility operator's worksite from bringing citizen suit against the facility operator pursuant to CERCLA based on that person's exposure to a hazardous substance in the workplace. *See Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1436 (7th Cir. 1988). It does not eliminate a reporting requirement any time a release takes place in the workplace.

access to health-related information. *See* 42 U.S.C. § 11023(h) (explaining the information submitted regarding toxic releases must be made available to the public). The Government alleges violation of Section 304 of EPCRA which requires the owner of a facility that produces, uses, or stores hazardous chemicals to immediately notice the State emergency planning commission[11] of a release of any extremely hazardous substance, if such a release must also be reported under Section 103 of CERCLA. 42 U.S.C. §§ 11004(a)(1), (b)(1).[12] The notice requirements of Section 304 of EPCRA are designed to supplement, not displace, Section 103 of CERCLA. Although the goals of CERCLA and EPCRA partially overlap and it is possible that the notice requirements of each could be satisfied with a single call, each creates a separate requirement that the Government alleges to have been violated here. There is nothing about the statutory schemes of EPCRA or CERCLA that would require the Court to strike allegations one or the other of them when pled in the same action.

Gibson's fourth motion to strike will be denied.

## V. Order

Based on the foregoing, IT IS HEREBY ORDERED that Gibson's motion to strike is DENIED.

IT IS SO ORDERED.

Dated:   March 20, 2017                    _____
                                           SENIOR  DISTRICT  JUDGE

---

[11] In California, the California Emergency Management Agency ("CEMA") was the relevant agency to which notice was required to be given. In any event, the notice requirement of EPCRA could be satisfied by dialing 911 and informing the operator of the release. 42 U.S.C. § 11004(b)(1).

[12] In contrast to CERCLA, EPCRA does exclude from required reporting of releases "any release which results in exposure to persons solely within the site or sites on which the facility is located." 42 U.S.C. § 11004(a)(4). *See Huls America Inc. v. Browner*, 83 F.3d 445, 447 (D.C. Cir. 1996); *In the Matter of Genicom Corp.*, 4 E.A.D. 426, *9 (E.P.A. Dec. 15, 1992) (quoting Conference Report 99-962, Superfund Amendments and Reauthorization Act of 1986, 132 Cong.Rec. H9113-14 (Oct. 3, 1986)).